IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JEANETTE CHAVEZ,**

        Plaintiff,

vs.                                        **No. CIV 99-1233 LCS**

**THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
ANN THOMAS, JEAN BANNON,
and CAROLYN CREAGER,**

        Defendants.

**MEMORANDUM OPINION**

        **THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. 37), filed March 28, 2000. After obtaining several extensions of time to conduct limited discovery, Plaintiff responded to this Motion on December 11, 2000. Defendants' Reply was filed on December 22, 2000. The Court, acting upon consent and designation pursuant 28 U.S.C. § 636, having considered the submissions of counsel, applicable law, and being otherwise fully advised, finds that this Motion is well-taken in part and should be **GRANTED IN PART AND DENIED IN PART.**

**I.    Background.**

        On June 15, 1998, Plaintiff was hired to work as an investigator with the Office of Equal Opportunity (OEO) at the University of New Mexico (UNM). While employed in this capacity, Plaintiff participated in an investigation of a complaint of sexual harassment by a work study student against an employee of the UNM bookstore. Plaintiff alleges that in the course of this investigation, she discovered a long-standing atmosphere of sexual harassment and perversion perpetrated by the

manager of the bookstore, including photographs of the breasts and buttocks students and employees of the bookstore as well as videotapes of sexual activities of the bookstore manager with employees. Plaintiff alleges that she suggested to her supervisors that the women in the photographs and the videos should be told the truth if they inquired into whether or not they had been targeted by the bookstore manager. Plaintiff notified campus police of her suspicions that women had been stalked by the bookstore manager or were being filmed in the bookstore restroom. Plaintiff's employment was terminated on December 9, 1998.

Plaintiff filed suit against Defendants in the Second Judicial District Court of the State of New Mexico, alleging breach of express and implied employment contract (Count I), violation of her federal due process rights under 42 U.S.C. § 1983 (Count II), and violations of her First Amendment rights under § 1983 (Count III). Defendant removed the case to this Court on October 25, 1999. After Defendants filed Motions for Summary Judgment raising qualified immunity, general discovery was stayed pending resolution of this question. Defendant Bannon was dismissed pursuant to FED.R.CIV.P. 41(a) on December 18, 2000.

Defendants move for summary judgment, arguing that the individual Defendants are improper parties with respect to the breach of contract claim; punitive damages are unavailable; Plaintiff failed to take the requisite action that would protect her from retaliation; the individual defendants are entitled to qualified immunity because Plaintiff's probationary employment status did not confer any due process rights; and the individual defendants are entitled to qualified immunity because Plaintiff's speech did not involve matters of public concern and speech was not a motivating factor in her termination. Plaintiff responds that she reported the alleged misconduct and that Defendants are not entitled to qualified immunity.

**II.     Standards**

Defendants have presented their arguments relating to the breach of contract claim with respect to the individual defendants and the issue of punitive damages under the standard of FED. R. CIV. P.12(b)(6). An issue should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). In ruling on a motion to dismiss, the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *See Ramirez v. Dept. of Corr. of Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000). The court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *See Ordinance 59 Ass'n v. United States Dep't of Interior Secretary*, 163 F.3d 1150, 1152 (10th Cir.1998).

Defendants have presented and supported their second breach of contract issue and the assertion of qualified immunity under the summary judgment standard of FED. R. CIV. P. 56. A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Ingram v. Muskogee Regional Medical Center*, 235 F.3d 550, 1326 (10th Cir. 2000).

**III.    Analysis**

    **A.    Whether Plaintiff's Punitive Damage Claims Should be Dismissed.**

Defendants argue that Plaintiff's claims for punitive damages must be dismissed because such damages are not available against governmental entities. Defendants are correct that punitive damages cannot be recovered from state entities, *see City of Newport v. Fact Concerts*, 453 U.S. 247 (1981), or from governmental employees sued in their official capacities. *See Sheideman v. Shawnee County Bd. of Comm'rs*, 895 F. Supp. 279, 283 (D. Kan. 1995). Accordingly, these claims should be dismissed. In addition, punitive damages are recoverable against individual defendants under §1983 only where "'the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *See Jolivet v. Deland*, 966 F.2d 573, 576 (10th Cir. 1992) (*quoting Smith v. Wade*, 461 U.S. 30, 56 (1983)). The Complaint does not allege such factors with respect to the §1983 claims against the individual defendants. Moreover, Plaintiff has failed to respond to this argument. Under D.N.M.LR-Civ. 7.3(b)(4), failure to serve a response in opposition to any motion constitutes consent to grant the motion. For these reasons, Plaintiff's §1983 punitive damage claims should be dismissed.

In asserting their punitive damages argument, Defendants fail to cite any authority germane to the state law breach of employment contract claim. Under New Mexico law, punitive damages are allowable in a case involving breach of an employment contract where there is a showing of bad faith during the course of the plaintiff's employment, or in the manner and method used to terminate the employee. *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. at 438, 872 P.2d at 856. The Complaint alleges bad faith with respect to the breach of employment claim. Accepting all the well-pleaded factual allegations of the complaint as true and viewing them in the light most favorable

to the Plaintiff, the Court has determined that the punitive damages claim relating to the breach of employment contract theory should not be dismissed at this time.

### B. Whether Plaintiff's Breach of Contract Claims Against the Individual Defendants Should be dismissed.

Defendants assert that Plaintiff's breach of contract claim against the individual defendants, Thomas and Creager, should be dismissed because they were not parties to the alleged implied employment contract between Plaintiff and UNM. The breach of contract claim is contained in Count I of the Complaint. A careful reading of Count I indicates that the individual defendants are not included in Count I. However, if the claim were alleged, New Mexico substantive law would apply to this supplemental jurisdiction claim. *See BankOklahoma Mortgage Corp. v. Capital Title Co.,* 194 F.3d 1089, 1103 (10th Cir.1999). Any act or omission of an employee within the course and scope of his or her employment is an act or omission of the employer. *See Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. at 437, 872 P.2d at 855. The claims against Defendants Thomas and Creager are based solely actions taken with the scope of their employment. Moreover, Plaintiff failed to respond to this point. Failure to serve a response in opposition to any motion constitutes consent to grant the motion. D.N.M.LR-Civ. 7.3(b)(4). Therefore, the breach of contract claim against Defendants Thomas and Creager should be dismissed.

### C. Whether Plaintiff is Entitled to the Protection of UNM's Anti-Retaliation Policy.

Defendants argue they are entitled to summary judgment on Plaintiff's breach of implied contract claim, reasoning that because Plaintiff failed to file a retaliation complaint, she is not entitled to the protections of UNM's anti-retaliation policy.[1] This policy provides in pertinent part that a

---

[1] Defendants do not argue the broader issue of whether there was an employment contract between Plaintiff and UNM.

"University employee may not interfere with the right of another employee to report misconduct and may not retaliate against an employee who has reported misconduct." (Affidavit of Plaintiff, Exhibit 2 at 5.) The policy defines "misconduct" as including discrimination and sexual harassment. (*Id.* at 3.) A complaining employee may report the misconduct directly to the department that is responsible for dealing with the conduct in question, which in the case of discrimination or sexual harassment was the OEO. (*Id.* at 2.)

Defendants rely solely on *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996) in support of this argument. However, *McKenzie* considered whether a personnel manager's warning that the employer might be subject to liability under the Fair Labor Practices Act was sufficient to invoke the anti-retaliation provision of the Act. *Id.*, 94 F.3d at 1486. The instant case does not involve the FLSA; it involves a claim for breach of implied employment contract under New Mexico law. Accordingly, *McKenzie* is not instructive and offers no support for Defendants' position.

Defendant asserts that Plaintiff never filed a formal complaint of misconduct or discrimination. (Def. Ex. D.) Plaintiff states in her affidavit and that she reported the alleged salary discrepancy between Hispanic females and non-minority males to her superiors at OEO. (Affidavit of Plaintiff, ¶¶ 12-17.) She also stated that she expressed the opinion that women who were secretly filmed by the bookstore manager should be so informed and also contacted a member of the Board of Regents to discuss this information. (Affidavit of Plaintiff, ¶ 10.) The Court has construed the record in the light most favorable to Plaintiff and has determined that material issues of fact remain in dispute on the issue of whether Plaintiff is entitled to the protections of this policy. Therefore, Plaintiff's breach of implied employment contract theory should not be dismissed at this time upon the ground advanced

by Defendants.[2]

### D. Whether the Individual Defendants are Entitled to Summary Judgment Based on Qualified Immunity.

Under the doctrine of qualified immunity, governmental officials performing discretionary functions generally are shielded from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 515 (10th Cir. 1998). A government official is entitled to qualified immunity from civil damages when her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating a claim of qualified immunity, the first question is whether the plaintiff has asserted a violation of a constitutional or statutory right. *See Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir.1996). If the plaintiff has asserted a violation of a constitutional or statutory right, then the question becomes whether that right was clearly established such that a reasonable person in the defendant's position would have known that his

---

[2] The Court observes that one possible contract that might arise from UNM's employment manual stems from the following section: "This policy describes the procedures for reporting and investigating misconduct, interference with reporting misconduct, and retaliation. **An employee who interferes with or tries to interfere with the right of another employee reporting misconduct or who retaliates against an employee who has reported misconduct is subject to disciplinary actions, up to and including dismissal.**" (Pl.'s Affidavit, Ex. 2 at 3.)(*emphasis added*). The question then becomes whether a contract between two parties to discipline a third person, not a party to the contract, is enforceable and if it is, what damages Plaintiff has sustained as a result of any breach. Moreover, although New Mexico law recognizes that an implied contract may arise from an employment manual, *see e.g. Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 24-26, 766 P.2d 280, 284-86 (1988), it is less clear whether a discrimination claims procedure (*see* Ex. 1 to Pl.'s Resp.) can give rise to an implied contract of employment. These issues are not before the Court. Of course, even probationary employees may not be discharged for unlawful purposes. *See e.g.* 42 U.S.C. § 2000e-2(a)(1); NMSA § 28-1-7; *Smith v. Texas Dept. of Water Res.*, 799 F.2d 1026 (5th Cir. 1986). However, Plaintiff alleges no such claim in her Complaint.

conduct violated the right.  *See id.,* 94 F.3d at1449 (*citing Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).

Summary judgment motions involving a qualified immunity defense are determined somewhat differently than other summary judgment motions.  *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995).  When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test.  *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999).  Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue.  *See id.; Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir.1995).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000).  If, and only if, the plaintiff establishes both elements of the test does a defendant then bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Albright*, 51 F.3d at 1535.

### 1. Whether the Individual Defendants are Entitled to Qualified Immunity on Plaintiff's Due Process Claim.

Plaintiff asserts that Defendants Thomas and Creager violated her rights under the due process clause of the Fourteenth Amendment when they terminated her employment without notice and hearing. These Defendants contend that the due process protections of the Fourteenth Amendment were inapplicable to the employment termination because Plaintiff was a probationary employee.

The Fourteenth Amendment provides in pertinent part that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.  Supreme Court precedent holds that an "essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Educ. v. Loudermill*, 470 U. S. 532, 542 (1984).  Accordingly, an individual must be given an opportunity for a hearing before she is deprived of any significant property interest. *See id*.  In the context of public employment, this principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in her employment.  *See Perry v. Sindermann*, 408 U. S. 593, 599 (1972).

In determining whether an individual has been deprived of a right to procedural due process, the Court must engage in a two-step inquiry: (1) did the individual possess a protected property interest such that the due process protections were applicable; and, if so, (2) was the individual afforded an appropriate level of process.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U. S. at 541; *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  The key issue in the instant case is whether Plaintiff possessed a protected property interest in her continued employment.

Whether a property interest "exists depends not upon the Constitution but upon `independent sources such as state law'." *Cleveland Bd. of Educ. v. Loudermill*, 470 U. S. at 542. The "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir.1998); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim

of entitlement to it.").

In the case of public employment, the inquiry is whether plaintiff had a "legitimate claim of entitlement" in continued employment under state law. *Farthing v. City of Shawnee*, 39 F.3d at 1135. If state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest. *See Campbell v. Mercer*, 926 F.2d 990, 993 (10th Cir.1991) (if a statute, regulation, or policy restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown). A legitimate claim of entitlement may be grounded in various sources of state law, including state statutes, local ordinances, established rules, or mutually explicit understandings. *See Farthing*, 39 F.3d at 1135.

Plaintiff admits that she was a probationary employee when she was terminated. (Pl.'s Resp. to Mot. for Summ. J. filed by Def. Bannon at 2.). The UNM Staff Recruitment and Hiring Policy states, in pertinent part, that an "employee may be released from employment during the probationary period with or without cause." (Affidavit of Anne Thomas, Ex. 1.) The Tenth Circuit has long held that a probationary employee does not possess a "legitimate claim for entitlement" to continued employment. *See Richardson v. City of Albuquerque*, 857 F.2d 727, 732 (10th Cir. 1988) (*overruled on other grounds, Melton v. City of Oklahoma City*, 928 F.2d 67 (10th Cir. 1984)) (probationary police cadet terminable if performance did not meet required work standards or if not a suitable employee failed to establish a legitimate claim of entitlement); *Sipes v. United States*, 744 F.2d 1418, 1419 (10th Cir.1984) (probationary employee that served "subject to satisfactory performance failed to establish legitimate claim of entitlement); *Walker v. United States*, 744 F.2d 67, 68 (10th Cir.1984) (*overruled on other grounds Melton v. City of Oklahoma City*, 928 F.2d 67 (10th Cir. 1994))

(probationary employee not entitled to due process protection because the employee had no "legitimate claim of entitlement" to public employment). Long standing Tenth Circuit precedent confirms that in December 1998, when Plaintiff was terminated, it was clearly established that a probationary employee did not have a legitimate claim to entitlement to continued employment.

Plaintiff argues that UNM's policies prohibiting retaliation for reporting misconduct and civil rights violations conferred upon her a reasonable expectation that she would not be retaliated against if she raised issues of misconduct and civil rights violations. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 15.) Plaintiff cites no authority for the proposition that policies prohibiting retaliation created a legitimate claim of entitlement to continued public employment. Assuming, *arguendo,* that there was a contract between Plaintiff and UNM by which UNM agreed not to retaliate against Plaintiff for reporting misconduct, *see supra* note 2, such an agreement would not give rise to a legitimate claim of continued public employment. The case relied upon by Plaintiff, *Patrick v. Miller*, 953 F.2d 1240 (10th Cir. 1992), is clearly distinguishable from the instant factual scenario. In *Patrick*, the Plaintiff disputed any probationary status, and the personnel policy at issue made no distinction between permanent and probationary employees; both were removable "only on the basis of merit." *Id.* at 1245. In the instant case, however, Plaintiff's probationary status is undisputed and the personnel policy clearly states that a probationary employee may be released with or without cause and places no restriction on Defendants' power to release Plaintiff from employment.

To defeat the motion for summary judgment, Plaintiff had the burden of establishing with specificity both that her termination violated a constitutional right and that the right violated was clearly established at the time of the violation. *Wilson v. Layne*, 526 U.S. at 609. Plaintiff failed to meet her burden. Even if a contract not to retaliate existed, such an agreement would not give rise

11

to a due process claim in light of Plaintiff's probationary employment status. In light of Tenth Circuit precedent, it was clearly established in December 1998 that a probationary employee, subject to personnel policies such as UNM's, did not have a legitimate claim to continued public employment. Accordingly, Defendants Thomas and Creager are entitled to qualified immunity on Plaintiff's due process claim.

### 2. Whether the Individual Defendants are Entitled to Qualified Immunity on Plaintiff's First Amendment Claim.

Defendants argue that Plaintiff is not entitled to the protections of the First Amendment because she did not engage in protected speech. The issue of whether a public employee may prevail on a First Amendment retaliation claim against her employer is governed by the following analysis: (1) Did the employee's speech involved a matter of public concern; (2) if so, the Court must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace; (3) the employee must show that the speech was a substantial factor in the adverse employment decision; (4) if so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech. *Jantzen v. Hawkins*, 188 F.3d 1247, 1257 (10th Cir. 1999); *see also Connick v. Meyers*, 461 U.S. 138, 146 (1983); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977 ); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The first two parts are questions of law; the second two generally involve questions of fact for the jury. *Jantzen*, 188 F.3d 1257.

As a threshold matter, the employee must establish that she engaged in protected speech involving a matter of public concern, and not merely a personal issue internal to the workplace. *See*

12

*Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995).  The determination as to whether the speech involves a matter of public concern is a question of law for this Court. *Johnsen v. Independent School Dist. No. 3*, 891 F.2d 1485, 1489 n. 3 (10th Cir. 1989).  Relevant factors include the content, form and content of the speech, *Connick,* 461 U.S. 147-48, and whether the speaker's purpose was to bring an issue to the public's attention, or to air a personal grievance.  *Moore*, 57 F.3d at 932 (c*iting McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989)).  Speech that pertains to a public agency's discharging of official duties will ordinarily be regarded as speech on a matter of public concern.  *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir.1996).  Conversely, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern.  *Id.*

Plaintiff argues that she engaged in public speech when she complained that Hispanic female OEO investigators received lower pay than similarly situated non-minority males in other departments and when she expressed the opinion that women clandestinely filmed by the bookstore manager should be informed of his actions. Plaintiff's complaint regarding the alleged pay discrepancy addressed only the salaries of Plaintiff and the two other investigators in the OEO office. The following material facts are not in dispute.  In her affidavit, Plaintiff states that the OEO investigator's research disclosed that non-Hispanic males in other department requiring similar job qualifications and descriptions were paid significantly more than the OEO investigators, who were all Hispanic women.  (Pl.'s Affidavit ¶ at 15.)  Plaintiff states that the OEO investigators expressed concern that their lower wages might be the result of discrimination against female Hispanics.  (*Id.*)

Plaintiff's speech regarding the pay discrepancy was directed at her own conditions of employment. Matters solely of personal interest to government employees are not subject to the First

13

Amendment. *Connick*, 461 U.S. at 147. Complaints designed to redress the speaker's employment situation do not qualify as matters of public concern. *David*, 101 F.3d at 1356. The purpose of Plaintiff's speech regarding the pay discrepancy was to obtain an upgrade of her own position. In other words, this speech focused solely on the conditions of her own employment. Therefore, Plaintiff's speech regarding the pay discrepancy did not raise an issue of broader public concern. Defendant's Thomas and Creager are entitled to qualified immunity on Plaintiff's First Amendment claim as it pertains to her speech regarding the alleged pay discrepancy

Conversely, Plaintiff's speech regarding the bookstore investigation did involve a matter of public concern. Plaintiff states in her affidavit that she expressed the opinion that UNM should hire independent legal to advise the OEO what duties, if any, were owed to the women who were clandestinely filmed by the bookstore manager. (Pl.'s Affidavit ¶ 9.) In this context, Plaintiff spoke primarily in her role as a citizen and not an employee. *See e.g. Moore,* 57 F.3d at 932 (statements regarding image problem of officer involved matter of public concern). Plaintiff's speech was prompted by her concern that UNM might be liable to the women involved. Plaintiff's motive was not to air personal grievances, but to bring to light a possible cover up. *Compare Dill v. City of Edmond*, 155 F.3d 1193 (10th Cir. 1998) (officer's speech that murder investigation targeted wrong man matter of public concern) *with Koch v. City of Huchinson*, 847 F.3d 1436 (10th Cir. 1988) (fire marshal's report regarding cause of blaze did not involve a matter of public concern). Plaintiff's situation is more akin to *Dill* than *Koch*. Plaintiff has satisfied her burden of showing that her speech regarding the bookstore investigation satisfied the threshold requirement of the First Amendment.

The Court must next weigh the interest of Plaintiff in commenting on matters of public concern against the countervailing interest of UNM in regulating Plaintiff's speech regarding the

bookstore to maintain an effective working environment.  *Dill*, 155 F.3d at 1203; *Pickering v. Bd. of Educ.*, 391 U.S. at 568.  An employee's First Amendment rights may not be restricted unless the employer shows some restriction is necessary to prevent the disruption of official functions or to insure the effective performance of the employee. *Dill*, 155 F.3d at 1203 (*citing Schalk v. Gallemore*, 906 F.3d 491, 496 (10th Cir. 1990)).  This requires Defendants to show actual disruption of services resulting from the employee's speech.  *Dill*, 155 F.3d at 1203 (*citing Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).  Defendants have failed to make such a showing.

The two remaining *Pickering/Connick* questions of whether the speech was a substantial or motivating factor in Plaintiff's discharge and whether UNM was have taken the same action against Plaintiff even in the absence of speech are fraught with disputed issues of material facts.  *See Jantzen*, 188 F.3d 1257.  Accordingly, Defendants Thomas and Creager are not entitled to qualified immunity with respect to Plaintiff First Amendment claim as it pertains to Plaintiff's speech regarding what duties were owed to the women who were clandestinely filmed by the bookstore manager.  The Motion for Summary Judgment with respect to this portion of the First Amendment claim should be denied.

**WHEREFORE,**

**IT IS ORDERED** that  Defendants' Motion for Summary Judgment (Doc. 37), filed March 28, 2000, is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion with respect to punitive damages under 42 U.S.C. § 1983 is **GRANTED** and Plaintiff's punitive damage claims brought under §1983 are **DISMISSED**.  The punitive damages claim with respect to the breach of contract claim should not be dismissed at this time.

**IT IS FURTHER ORDERED** that the Motion with respect to the breach of contract claim against the individual defendants is **GRANTED** and Count I with respect to the individual defendants is **DISMISSED**.

**IT IS FURTHER ORDERED** that Motion with respect to Plaintiff's breach of contract claim against Defendant UNM is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion with respect to qualified immunity as to Plaintiff's due process claims is **GRANTED** and summary judgment shall be entered in favor of Defendants on this claim.

**IT IS FURTHER ORDERED** that the Motion with respect to qualified immunity as to Plaintiff's First Amendment claim as it pertains to Plaintiff's speech regarding the alleged pay discrepancy is **GRANTED** and summary judgment shall be entered in favor of Defendants on this claim.

**IT IS FURTHER ORDERED** that the Motion with respect to qualified immunity as to Plaintiff's First Amendment claim as it pertains to Plaintiff's speech regarding what duties were owed to the women who were clandestinely filmed by the bookstore manager is **DENIED**.

An Order in accordance with this Memorandum Opinion shall issue.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**